JUDGE SIMPSON
delivered the opinion of the court. (Judge Duvall did not sit in this ease.)
Elias Thomason administered on the estate of Stephen Thom-ason in 1833. He died in 1842, without having made any settlement of his accounts as administrator. In 1844 his administrators made two settlements of his accounts, as the administrator of Stephen Thomason, with the county court commissioners. In 1852 the distributees of Stephen Thomason brought this action against the administrators of Elias Thom-ason, to recover a balance, which they alleged the. said Elias Thomason owed them as administrator of Stephen Thomason, at the time of his death.
The principal question in the case is as to the effect to which the settlements referred to, as having been made with the county court in 1844, are entitled.
The act of 1834 (1 Statute Law, 510) made it the duty of the county courts to appoint three commissioners of accounts. The second section of that act contained the following provision, viz : “ That it shall be the duty of said commissioners, or any two of them, when called upon by any executor, administrator, or guardian, or by any other person interested in the estate in the care, possession, or under the control of any executor, *53 administrator, or guardian, to state and settle tbe accounts,, truly and fairly, of such estate.”
As these settlements were made under this act, they are void and of no effect, unless they were authorized by it.
The act applied, according to the language used in it, to cases where the estate to be settled was under the control of the executor, administrator, or guardian, who called upon the commissioners to make the settlement; and literally construed, might be made only to apply to the executors or administrators of the estate to be settled. But it must be recollected that the estate in the hands of the administrator, at the time of his death, which had been converted into money, formed a part of his estate, which was under the control of his personal representatives after his death, and must be accounted for by them. As it was under their control, and as they, so far as it was concerned, represented the deceased administrator, they were, in our opinion, authorized to have his accounts, as administrator, settled by the county court. If such a settlement were not literally embraced by the act, it certainly came within its meaning and spirit. The administrator, if living, might have called upon the commissioners to make the settlement, and having died, the right to do so devolved upon his administrators. An administrator de bonis non would have had nothing to do with this part of the estate of Stephen Thomason. The administrators of Elias Thomason were responsible for it, and they were the persons with whom the settlement of it had to be made. As it was a preferred debt against the estate in their hands, it was important to have it settled, that they might be apprised of the extent of this liability against them. We think, therefore, that the county court had authority to make these settlements, and that they were prima facie evidence in this case in favor of the defendants.
Giving to them this effect, and correcting them only to the extent that they were shown to be erroneous by the plaintiffs, it is evident that the judgment of the court below was for as< large a sum as the plaintiffs were entitled to.
We think the administrator was chargeable with the appraised value of the slaves, but no more, inasmuch as a sale of them *54 was necessary for the payment of debts. But, under all the circumstances, we think the administrator should be charged with interest on the balance in his hands; and that the sum for which the judgment was rendered did not exceed the amount for which his estate was responsible.
Wherefore, the judgment is affirmed on both the original and cross appeal.